Oh, yeah. Oh, yeah. Oh, yeah. The Honorable Appellate Court Fifth District State of Illinois is now in session. The Honorable Justice Bowie presiding along with Justice Welch and Justice Warden. The first case this morning is number 5 20-0327 Gaddis versus Lannom. Arguing for the appellant, Donald Gaddis, is Daryl Dunham. Arguing for the appellee, William Lannom, is Victor Rassen. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings. Good morning, counsel. How are you all? Fine, Your Honor. Mr. Dunham, are you ready to proceed? I am, Your Honor. I just note that your screen's a little hazy, but as long as we can hear you, I think we're okay. Okay, Your Honor. I'll try and I've got somebody that's technically proficient. Maybe we can improve the next time. Not a problem. Go right ahead. May it please the court. My name's Daryl Dunham. I represent Donald Gaddis. The facts, this is a malicious prosecution case. Both sides move for summary judgment by the trial judge, and we took an appeal. I think what you will, you've got more than, I guess, two choices in this case. You can, of course, affirm, which we're praying that you don't. You can enter summary judgment as to liability in favor of the plaintiff, which is our preferred option, or you could remand for further fact-finding, saying that neither summary judgment should be granted in this case. I think the facts are rather rather straightforward. In October of 2017, the police, including the defendant, in this case, William Lannan, who was a Marion police officer, came out to my client's house. And at that time, he was arrested for disorderly conduct, but charges were never brought. And so therefore, they were dismissed. I want to question, was he not assisting another officer? Was he the first caller? Or was the other officer there first? You know, I think the other officer was there first, Your Honor. And then Lannan came on the scene subsequent to that point in time. There was nothing about that particular interaction. If you look at Gaddis' deposition, you look at Lannan's deposition, that was extraordinary. It was a routine police call, police visit. Lannan makes it very clear in his deposition that he didn't find anything untoward or difficult, threatening, he didn't feel like he was in any way being threatened or at risk about that interaction at all. And in his petition, for the order of, actually, I don't want to say order of protection, because technically under the statute, it's a no contact, no family members. So in that stocking petition, Lannan does reference that arrest in that event. The only other event that Lannan references in his petition, his verified petition, for which he didn't achieve an ex parte temporary order, was an event that occurred the following March at the, at the, the home of another Marion police officer. Lannan was never there. He wasn't on the scene. Gaddis wasn't in a position to threaten him or do anything with regard to him at all. And during the course of my client was arrested in that case, and criminal charges are still pending in that case, but the, the Marion off duty police officer, a fellow by the name of Damadi, was allowed to, they claimed inventory, my client's vehicle, we think it was just a flat out search, it makes no difference. But during the course of Damadi, who was not on duty at the time, goes into my client's vehicle and finds his personal notebook, and reads the notebook, and find some references in the notebook, where Lannan is mentioned in my client's personal notebook. And so Damadi gets on on the phone or on the horn, calls Lannan, and said, there's some language in here that I, you know, deeply concerning me. And so both Damadi and Lannan filed a verified no stalking petition against Gaddis. Both were dismissed. Lannan testified that he did so because he didn't consider Gaddis any longer a threat. And so that's what he has verified petition says. Lannan never read the notebook. And most importantly, the notebook wasn't directed at Lannan, it was a personal notebook of my client's own notes, for his own reference, and for his own safety. Useful in preparing for his, the, what we believe is a systemic, systemic series of harassment by the Meriam police against him. I have one question. Was, was there also something else discovered in that, if you say it in search or whatever it was, what else was there? Besides the criminal case, there was a, I think there was a golf club that they found in the backseat of his car. There was also, they make big reference to that. He had a, a, a holster for a pistol and a clip, a gun clip for a gun without any bullets in it. Was something about a speed loaders, two speed loaders or something like that? You know, Your Honor, I'm not, I don't even own a gun, but it's some kind of accessory for a, for a handgun. You know what that is, don't you? I think so. It's for loading a revolver, isn't it? I think that's correct, Your Honor. The point is that it didn't have a, we didn't have any bullets in it. There wasn't any gun. And the fact, I hope we're not to the point where the fact that a citizen winds up having, even having a gun, that that's not grounds to get an order and no stalking, no contact order against the citizen. The only other events that we, they come out, you know, in deposition are the fact that my client lives near the Marion Police Department. He's not happy with them. He is a, there's no dispute that he engages in them on a frequent basis. And there's a big dispute about whether or not he ever flipped the bird at them. But he's, there's no testimony by Lanham that he was singled out. There was some kind of direct communication with Lanham. The, I think the record is clear that to the extent there's any interaction there is with a group. And I don't think Lanham even himself testified that any of the verbiage between my client and the Marion police was directed, directed at him. Moreover, in his deposition, he never testified that he in any way felt concerned or threatened or abused or bothered by these interactions with the he, he admits he never put it in his petition. He testified in deposition, he never felt so threatened that it caused him even concern about going and getting some kind of civil relief. Now, the point is that I see my time is running short here rather quickly. And I need to get to two points. Number one is there's a big dispute between the Lanham and Gaddis about first the issue of probable cause. Lanham seems to take the position that somehow there can be some kind of vague understanding subjective understanding that if he feels threatened, then he's just he has probable cause to go ahead and file this petition. We cite the malicious prosecution, you have to look at the elements. The only way you can define a crime or an offense is by looking at the elements. And so he has to have had probable cause with regard to the elements. And in this case, there was no number one, there weren't any, there wasn't any two acts of stalking, which is an element of this particular offense of no contact, no stalking. And there were none of these, particularly the one with regard to the notebook, that wasn't directed at him. That is a requirement of the statute. I cite a case out of this jurisdiction that you can vote if you put something on a Facebook page, it's not directed at any person, it might be a comment about them, but it's not directed at them. That is not an act of stalking or surveilling or otherwise, because it's not directed at somebody, it's directed at other direction. In this case, it's a personal notebook, Your Honor, my client's personal notebook, it's directed at two acts of stalking. The first act of supposed stalking when he was an arrest, when he was arrested, even when an amnesty doesn't feel like he was in any way threatened. The other issue that I have to talk about is that of special damages. And it is true under Illinois law, simply because you had to hire an attorney and you had to go through the inconvenience to defend yourself that does not constitute special damages for malicious prosecution purposes. However, in this case, there's a plethora of evidence that this is part of a scheme and pattern of the Marion police to go after my client. We got the Damati and Lanham working together in concert and filing these these frivolous orders of arrest. And this is a pattern that's aptly documented in the record through my client's affidavit of numerous arrests, dismissal of charges, etc, etc, etc. And we say that this is a right case, under the cult awareness case and others, that were special damages to sustain. More importantly, this court in a case called Bryant versus Hutchinson, has ruled that the actual language in the order of protection that was entered against my client in the Lanham case violates his First Amendment rights. In other words, while while this temporary order was in place, he was prohibited from exercising his First Amendment rights by communicating to or about Lanham. And that in a series of cases, the Illinois courts have said that particular language violates the First Amendment of the Constitution. And then I we cite in our brief case out of North Carolina that basically says if the damage that you have sustained as a is in the nature of injunctive relief, which is that's exactly what the no stalking no contact petition is. It's injunctive relief, where your property rights or your constitutional rights are being infringed that constitutes special damages. In other words, what's going on here is over and above significantly over and above the fact that Lanham had to get an attorney felt like he was and so we believe that at a minimum, there, the trier fact should decide the whether there were special damages are and also whether there was probable cause. The point is, there was no probable cause for Lanham to file this action, he may subjectively have felt like, you know, he was in some kind of jeopardy, but his the test is not subjective. In this case, regardless of how intense Lanham may have felt or may not have felt, I think, given the opportunity to go before the jury, I think we'll be able to show that what we have here is a series of Marion police officers, they wound up deciding that they don't like this guy. And they're just piling on. And that is exactly what happened when they filed these orders of protection against him. With regard to the special damages, at a minimum, he was under an injunction. And if he violated that injunction, he would have been subject subjected himself to criminal charges for a class A misdemeanor. And if he had done it twice, it was a felony. And so while this order was in place, his constitutional rights were being taken away from him. He was deprived of those constitutional rights, and that should constitute special damages. And I see I've only got 30 seconds. Any any questions, Your Honor? Thank you, Your Honor. Obviously, Mr Dunham, you'll have time for rebuttal. Uh, Mr Eason, you ready to proceed? Um, yes, thank you very much. Um, please, the court. My name is Victor Essin, and I'm here. I'm sorry. Oh, no. No worries. I'm here on behalf of a Pele officer, William Lanham. Um, and obviously, it's our position that the summary judgment should be affirmed should be affirmed for two reasons. First, it should be affirmed because, as the trial court noted, there was, in fact, probable cause, um, for Officer Lanham to file his petition for stalking no contact order. Um, and in addition to that, um, there was no special injury. The term is special injury, um, within the elements of malicious prosecution. So it was, in other words, Gaddis suffered no special injury above and beyond, um, the ordinary nuisance of having a suit filed against him. Um, addressing the happened in the briefing. In this case, is Gaddis has sort of taken the position that, um, that Lanham would have had to be in the position to prove his case of malicious prosecution to have probable cause at the time the petition is filed. Um, that is not the standard. The standard is whether a person of ordinary care and prudence, uh, would be led to believe or to entertain an honest and that the accused committed the offense charged. Um, and so it's really just whether someone had a reasonable belief that the offense had been charged. I think, um, Mr Gaddis and Mr Dunham are correct. And in one part, you do need to look to the language of the no stalking statute a little bit for some guidance there. And that does tell us, um, that stalking is a course of and he or she knows or should know that this course of conduct would cause a reasonable person to fear for his or her safety. The safety of a workplace school or place of worship or the safety of a third person. Um, then that uses the term course of conduct. Um, and course of conduct means two or more acts, including but not limited to acts in which a respondent directly indirectly or through third parties by any action method, device or means follows, monitors, observes, surveils or threatens a person, workplace, school or place of worship. Um, and what's interesting about that is this whole concept that things be directed to, um, the person who's seeking the petition for for stalking no contact order. Um, that that the actions of the defendant or respondent in that matter be directed to the petitioner is actually not true under the elements of the statute. It can involve things directed to third parties as well. Um, and so then the question here really is whether, you know, whether the undisputed facts show that there is, in fact, probable cause whether William Lanham had a reasonable, um, basis to believe that Mr Gattis, um, was was stalking him, um, or could be stalking or threatening him. And so really the undisputed facts. And I think, you know, on October 20th, 2017, there was this initial arrest. Lanham was one of the assisting officers with that. Gattis was very angry about that. He talks about that in his deposition. Um, and so that that was that that was a big driver of Mr Gattis behavior, and everyone understood Gattis was angered by that that arrest, which he believed to be false. Um, Gattis had habit, and this is undisputed, had a habit of driving around through near the city of Marion Police Department. Um, and obviously there's an issue about whether he's like looking at the individual officers or not. But again, he's identified a class of folks he's unhappy with, um, and is threatening surveilling monitoring. Um, then, obviously, we have this March 25th incident where Gattis trespasses on the personal on the personal at the personal residence of Officer DiMatti, who was the arresting officer in the October 20th, 2017 event that Lanham or Lanham was was sort of more tangentially involved in. Um, and he barges in and threatens Officer DiMatti, another off duty police officer who's there. Um, and then because he wants to have a word with them about about this false October 20th, 2017 arrest, that's when the notebook is found. Um, I think there's a lot of details that Mr Dunham has thrown in his analysis or under or painting of the picture there that are not in fact in the record here, and I don't think they're in the record anywhere. But obviously, Lanham does come to learn. He's listed in the notebook. Gattis is angry with him. Gattis accuses him lying in the notebook. Um, all this stuff is communicated. Obviously, that's strange to be found in someone's personal notebook, particularly when you were so tangentially involved, um, in in this arrest. Um, then, in addition to that, obviously, there's the holster, the speed loaders that are found at the same time. So there's a reasonable belief that the Gattis has access to firearms. Um, he's in a potential has got a potential to cause some physical harm. Lastly, Lanham really did fear for his life. I mean, really subjectively feared for his life. And I know that the standard is a little bit more complicated than that. But the record in the case is that he not only feared for his own life, but then also had sent his family away from his house while the temporary, um, or the ex parte or, um, is in effect after filing the petition for, um, stalking no contact order. And so I mean, there's he's obviously has a very real, sincere belief that he is in some danger. One thing that the trial court picked up on, and I think it's important because the trial court did did kind of analyze this and cited a case that is sheds a little light on this. It's called Keefe versus Aluminum Company. Um, but the trial court focused also on the fact that the the ex parte order was granted. You know, there is actually a case law in this case adopts it that when a when there's actually a finding by a trial court that against the person is bringing the petition, no stalking or or when when someone's bringing any kind of claim when there's a finding against that person, even if it's reversed on appeal, ultimately found not to be a viable, um, cause of action. There is probable cause is a matter of law. Um, so it's not directly analogous, but I think it's important here that all those things that were in the petition were essentially admitted to be true by Gattis. And we kind of carefully went through that with him in his deposition. Um, and and, you know, the trial court or the court that was handling the petition, um, the original petition, the subject of the suit found that to be credible and worthy of entering the ex parte order. Um, so I think when you look at all of that and all these things I'm talking about, they're not disputed. Gattis didn't dispute any of this in his deposition. Um, there is obviously probable cause is a matter of law, um, to have brought this. Um, there's also or this court should also affirm the trial courts, um, entry summary judgment on this matter. On the issue of special injury, special injury, um, is it's not special damages. Um, so a lot of the briefing talks about special damages over and over again. Um, and special damages are are not what's at issue. Special injury is of the element, and that is something beyond the usual expense and annoyance of having a lawsuit filed against you. It and the importance of this element is that this is the element that Illinois courts have used to really determine, um, and kind of uses the gatekeeper function to what they say. Maintain the balance of societal interests in allowing people to reasonable access to courts while also keeping some discipline on people in terms of avoiding finally, um, frivolous claims. And so, uh, the question here really is, is what? What? What? What are the damages that Gaddis claimed? Well, originally claimed he was defamed. He had been. He had lost reputation in the community. Um, he had lost business opportunities in his deposition. He systematically, um, admitted that none of that's actually true. Um, you know, he had not lost his job before, um, the petition for no stalking or stalking. No contact order was was filed. Um, no one had ever told him that any of this, uh, this damaged his reputation. Um, so we come to these kind of stranger things that that that I mean, it's not strange. They're they're interesting on some level things that Mr Dunham has argued here, um, to try to say that there is a special injury. So, uh, Mr Dunham first says, well, you know, even if my guy doesn't have economic loss, even if he hasn't suffered any kind of emotional mental injury, no, no medical injury from all this, no, no real meaningful inconvenience. He has this hypothetical First Amendment interest that has been damaged. The problem with that is we can't. There's no such thing as hypothetical damages. There's no such thing as a hypothetical injury. Gaddis would have had to have some intention to exercise some First Amendment right that wasn't exercised. Um, if that's gonna be his special injury here, and he didn't have that. If you, you know, I very again the deposition you have all of Gaddis is deposition. I very carefully went through. What do you claim your damages? What could you not do once this order was entered? What's this ex parte order was entered? And he didn't have anything. The only thing that he said that he did differently was he found it very alarming how we got served with process in the matter, and he didn't go to his Easter dinner, his family Easter dinner because it's happened right around the time of Easter. Um, because he got served with process. He also said that he didn't like that people in the courthouse knew who he was. Well, these are two things that are necessary incidents to filing any kind of lawsuit. Um, that is the usual annoyance and irritation of having a lawsuit filed against you. Um, the other thing that Mr Gaddis or Mr Gaddis, Mr Dunham argued to try to make this case fit within the special injury exceptions, they rely on cult awareness and this other case shed. Both of those cases involve systematic filings of lawsuits where there are multiple lawsuits filed and shed. It was something like nine non meritorious losing lawsuits before a special injury was recognized. Um, that would support a malicious prosecution claim in cult awareness. It was actually on a motion to dismiss a procedurally a little different. There were 21 lawsuits filed against the plaintiff cult awareness that they alleged were coordinated by the Church of Scientology. I was the defendant in that case. Obviously, that's a little different than what we have here. Here we have one petition for stalking no contact order. Um, and so those are demonstrably different cases. The way that Gaddis has tried to get around that and to shoehorn this in is to say, well, I've got these ongoing disputes with the city of Marion police department. They're persecuting me. They have all these other, um, criminal charges that have been filed against me. And, you know, some of them been dismissed. Some of them are still pending, and this is a pattern of harassment. And really, Officer Lanham's petition was just part of that pattern of harassment. And so it's a conspiracy, like almost like there was in cult awareness. The problem with this is and the problem with this argument ultimately is that the procedural posture of this case is summary judgment. A summary judgment. You have to at least assert some evidence, um, that creates a fact issue. That's not what we have in the record here. Um, there is no evidence that Lanham's petition was part of any kind of pattern of conduct on the on the part of the city of Marion Police Department. The city of Marion Police Department is not sued. The other co conspirators are not sued. This is not pled in the complaint. Um, all that's in the record is Gaddis is affidavit in which he says, well, I've had other run ins with the law with the city of Marion Police Department. He doesn't link it toe to Lanham Lanham's activity. And in fact, when he was asked if any of the other criminal cases or any of the other matters there was any evidence linking those to, um, Lanham's petition for stalking. No contact order. He denied it. There is no evidence of any injury in this case, let alone the special injury that's required under the elements of a malicious prosecution plan. And obviously I'm running out of time here. But, um, for all those reasons, this court should affirm, um, the sound decision of the circuit court when it entered summary judgment in favor of Officer Lanham. Um, just real quickly, you raise in your brief the issue of, um, 7 45 I. L. C. S. 10 slash 2-208. Was that raised in the trial court? Yes, it was. It was played as an affirmative defense. We did, in fact, um, set it out. And I think that's an alternative basis, although that was not something considered by the trial court. That's an alternative basis, um, to, uh, to find for my client here into a firm just warden. Just Welch. Have any questions? No questions. All right. Thank you, Mr Dunham. Rebuttal. Yeah. Yeah. Can you hear me? Yes. Okay. I had to unmute myself. As to the last point, Your Honor, I bet that immunity you had to be in the ordinary course of your duties. That was not true in this case. Furthermore, you had to be acting without malice. And we obviously this is a malicious prosecution suit. Um, throughout this, uh, his presentation, Mr Essam keeps talking about Officer Lanham, Officer Lanham. This is a he wasn't a police officer when he filed this. He was not acting in the course of his duty. He was doing it as a private citizen. And so whether he's a police officer or not, insofar as his is not germane, the standard is not whether or not Officer Lanham had some kind of honest and sincere belief. Frankly, we dispute that. We don't think that he had any honest or sincere belief that he in any way threatened. We think that the jury should be able to make that determination, and it's certainly not a fact that should be found in his favor on summary judgment. Um, the timing of his petition and the Demati petition is very suspicious. There have been eight charges filed as a result of Marian police officer arrest of my client that have all been dismissed, having a an injunction issued against you so that you cannot exercise your First Amendment rights. And if you do, you will be arrested and criminal charges will be brought against you. That's not a hypothetical injury. That's an actual injury, and it's direct. And although it maybe it can't be quantified monetarily, that is an injury. I find it. I guess we finally have a dispute that we can be focused on. Mr Essam is saying that if they alleged conduct was not could be directed at a third party, and then Lanham could get an no stocking order. As a result, that's what I heard him to stay. That's what I understood him to say. So let's just think about this. Uh, I make a, uh, maybe an actual threat directed at at, you know, a politician that I don't like so that the politician may have standing to go get a no stocking, no contact order against me. Does that mean that Lanham can because he's aware of that threat? I mean, that opens that opens the door to anybody getting a no contact, no stocking order because he sees some kind of threat directed at some other other person. But in this case, there was no threat at all, ever. Number one, all of the interactions with the Marion police that I don't think even had to be argued or disputed. Never in Lanham's petition, never mentioned, asked him in his deposition. Was this something that bothered you? Was this something that caused you to maybe go get an OK? No, not at all. With regard to the interactions at the time of the arrest, Lanham never felt threatened, never felt like he was being surveilled or stocked at all. So it all comes down to and he admits this in his deposition. What if it hadn't been for his knowledge of what he thinks that would file the petition in the first place? That notebook wasn't directed at him. It was his personal notes. Were there any death threats in there? Any statements that Lanham or anybody else was was going to be shot or killed or anything like that? No. The only thing that's in there that's directed at Lanham is that my client thinks he lied. Well, I sure hope we're not to the facts in somebody's personal notebook. I guess I had to be very careful what I write in my private journal now because it can be used against me in an OK. This this case should be reversed and we should be able to try this case for damages. Well, thank you, counsel. Justice, you have any questions? No question. Well, obviously, we will take this matter under advisement and issue an have a great day. Thank you very much.